42351. GEORGIA LIONS EYE BANK, INC. et al. v. LAVANT.
(335 SE2d 127)

WELTNER, Justice.

This appeal is from an order of the State Court of Chatham County holding unconstitutional OCGA § 31-23-6 (b) (1), which authorizes, under specified circumstance,[1] removal for transplant of the corneal tissue of decedents if no objection is made by the decedent in his life or by his next-of-kin after death.

This law was enacted by a virtually unanimous General Assembly in 1978. The record indicates that before its passage, approximately 25 corneal transplants were performed each year. In 1984, however, more than 1000 persons regained their sight through transplants.

Pursuant to this Code section, officials of the Georgia Lions Eye Bank removed during autopsy the corneal tissue of an infant, who had died of sudden infant death syndrome. While the parents of the infant did not object, there was no notice of the intended removal, nor any realistic opportunity to object. Sometime later, the mother discovered for the first time that the corneal tissue had been removed. She brought suit against St. Joseph's Hospital and the Georgia Lions Eye Bank for the wrongful removal of the tissue.

The trial court held the statute violative of due process in that it deprives a person of a property right in the corpse of his next-of-kin, and fails to provide notice and an opportunity to object.

---

[1] OCGA § 45-16-27 (a) (1) provides, in part, that coroners shall require a post-mortem examination or autopsy when any person dies "suddenly when in apparent good health."

1. In the earlier days of the common law, so Blackstone avers, no property right existed relative to a dead body, and matters concerning corpses were left to the ecclesiastical courts. "But though the heir has a property in the monuments and escutcheons of his ancestors, yet he has none in their bodies or ashes; nor can he bring any civil action against such as indecently, at least if not impiously, violate and disturb their remains, when dead and buried." 2 W. Blackstone, Commentaries *429 (T. Cooley, ed. 1899).

Because there were no ecclesiastical courts in this country to resolve matters relating to corpses, the courts conceived the notion of "quasi-property right," when referring to the interest of relatives in the bodies of their next-of-kin. Dean Prosser noted: "It seems reasonably obvious that such 'property' is something evolved out of thin air to meet the occasion, and that in reality the personal feelings of the survivors are being protected, under a fiction likely to deceive no one but a lawyer." W. L. Prosser and W. P. Keeton, Prosser and Keeton on Torts, p. 63 (5th ed. 1984).

In Georgia, an early case considering this interest of next-of-kin is *Louisville &c. R. Co. v. Wilson*, 123 Ga. 62 (51 SE 24) (1905). The precise nature of the interest was never defined, although we held that some type of claim was stated. However, in *Pollard v. Phelps*, 56 Ga. App. 408, 415 (193 SE 102, 107) (1937), the court held that "[a]t common law no property right was held to exist in a dead body; and though this view is still maintained in a strict sense, the courts of civilized and Christian countries regard respect for the dead as not only a virtue but a duty, and hold that, in the absence of testamentary disposition, a quasi property right belongs to the husband or wife, and, if neither, to the next of kin." See also *Rivers v. Greenwood Cemetery, Inc.*, 194 Ga. 524, 525 (22 SE2d 134) (1942), wherein we held "that a dead body is quasi property over which the relatives of the deceased have rights which the courts will protect."

Thus, it can be seen that in Georgia, there is no *constitutionally* protected right in a decedent's body. Rather, the courts have evolved the concept of quasi property in recognition of the interests of surviving relatives in the possession and control of decedents' bodies. We do not find this common law concept to be of constitutional dimension.

2. A right of action existing at common law may be modified or abrogated by the legislature. *Teasley v. Mathis*, 243 Ga. 561 (255 SE2d 57) (1979).

"A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will, or even at the whim, of the legislature, unless prevented by con-

stitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances." *Munn v. Illinois*, 94 U. S. 113, 134 (24 LE 77) (1876).

3. " 'The preservation of the public health is one of the duties devolving upon the State as a sovereign power. In fact, among all of the objects sought to be secured by governmental laws, none is more important than the preservation of the public health'; . . . 'Health regulations are of the utmost consequence to the general welfare; and if they are reasonable, impartial, and not against the general policy of the State, they must be submitted to by individuals for the good of the public, irrespective of pecuniary loss.' " *Abel v. State*, 64 Ga. App. 448, 452-453 (13 SE2d 507) (1941).

Certainly, the General Assembly has it within its power, in the interest of the public welfare, to authorize this procedure, which yearly benefits hundreds of Georgians.

The motions for summary judgment of the hospital and the eye bank should have been granted.

*Judgment reversed. All the Justices concur, except Marshall, P. J., who dissents.*

MARSHALL, Presiding Justice, dissenting.

While I am heartily in favor of the purpose of the statute in question to provide corneal tissue for transplants, I am constrained to hold that the statute violates the due process provisions of the Constitutions of Georgia and the United States. The statute fails to provide notice to the next of kin and a realistic opportunity to object to the corneal tissue removal, and, therefore, in my opinion, violates the fundamentals of due process.

I respectfully dissent.

DECIDED OCTOBER 9, 1985 —
RECONSIDERATION DENIED OCTOBER 29, 1985.

*Kent & Barrow, A. Martin Kent, Kilpatrick & Cody, William B. Gunter, Everette L. Doffermyre, Jr., Constance C. Russell, Bouhan, Williams & Levy, Joseph P. Brennan,* for appellants.

*Calhoun, Donaldson & Cox, Walter W. Ballew III,* for appellee.